IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : CRIMINAL NO. 1:14-CR-69 |
| | : |
| v. | : (Judge Conner) |
| | : |
| EUGENE STALLINGS, JR., | : |
| | : |
| Defendant | : |

**MEMORANDUM**

Eugene Stallings, Jr., was sentenced to 252 months' imprisonment after being convicted on multiple drug charges. Stallings now moves to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. We will deny the motion.

**I.    Factual Background & Procedural History**[1]

On March 19, 2014, a grand jury indicted five defendants for various drug offenses. (Doc. 1). The grand jury returned a superseding indictment on May 14, 2014, adding Stallings and one other individual as defendants. (Doc. 52). The superseding indictment charged Stallings with criminal conspiracy to distribute and possess with intent to distribute 100 grams and more of heroin (Count 1), in violation of 21 US.C. § 846; distribution and possession with intent to distribute 100 grams and more of heroin (Count 2), in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; criminal conspiracy to distribute and possess with the intent to distribute

---

[1] The following factual narrative derives from testimonial evidence adduced during the August 12, 2020 evidentiary hearing in this matter, and a February 1, 2016 pretrial hearing, (see Doc. 404), together with exhibits submitted by Stallings. The court reporter has provided the court with a rough transcript of the evidentiary hearing. Citations to the hearing transcripts are abbreviated as "8/12/20 Tr. __" and "2/1/16 Tr. __." Pagination of the rough draft of the August 2020 hearing transcript may vary from pagination of the official transcript.

heroin resulting in death (Count 3), in violation of 21 US.C. § 846; distribution and possession with intent to distribute heroin resulting in death (Count 4), in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; and criminal use of a communication facility (Count 6), in violation of 21 U.S.C. § 843(b).  (See id.)  The superseding indictment identified Kyle Golter as the victim as to Counts 3 and 4.  (Id. at 4-5).  Stallings moved to dismiss the indictment twice, (see Docs. 213, 338), and the court denied both motions, (see Docs. 226, 227, 338, 340).

On February 5, 2016, after a four-day jury trial, the jury found Stallings guilty on each count.  (See Doc. 347).  The court sentenced Stallings to an aggregate term of imprisonment of 252 months, consisting of 252 months on Counts 1, 2, 3, and 4, and 48 months on Count 6, to be served concurrently.  (See Doc. 392).  Stallings appealed his conviction, our jury instructions, venue in this judicial district, and the court's various continuances of trial as violative of the Speedy Trial Act.  The court of appeals affirmed on all theories.  See United States v. Stallings, 701 F. App'x 164 (3d Cir. 2017) (nonprecedential).  Stallings did not file a petition for *certiorari*.

Stallings thereafter timely filed his Section 2255 motion, asserting two grounds for relief.  Stallings claims his trial counsel, James H. Rowland, Jr., Esquire, was ineffective at the plea-bargaining stage and, separately, that he was ineffective at trial for failing to present certain evidence.  After the government filed its opposition to Stallings' Section 2255 motion, Stallings requested expert funds for a forensic pathology expert.  (See Docs. 457, 470).  We denied Stallings' request on the grounds that Stallings had not offered a plausible, nonspeculative defense

regarding Golter's cause of death.  See United States v. Stallings, 380 F. Supp. 3d 458, 459-60 (M.D. Pa. 2019).

Shortly thereafter, the parties agreed to limit the scope of the evidentiary hearing to Attorney Rowland's plea-bargaining performance.  We convened an evidentiary hearing on August 12, 2020, and the parties elected not to submit post-hearing briefing.  Stallings' Section 2255 motion is now ripe for disposition.

## II.   Legal Standard

Under 28 U.S.C. § 2255, a federal prisoner may move the sentencing court to vacate, set aside, or correct the prisoner's sentence.  28 U.S.C. § 2255.  Courts may afford relief under Section 2255 on a number of grounds including, *inter alia*, "that the sentence was imposed in violation of the Constitution or the laws of the United States."  28 U.S.C. § 2255(a); see also 28 U.S.C. § 2255 Rule 1(a).  The statute provides that, as a remedy for an unlawfully-imposed sentence, "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate."  28 U.S.C. § 2255(b).  The court accepts the truth of the defendant's allegations when reviewing a Section 2255 motion unless those allegations are "clearly frivolous based on the existing record."  United States v. Booth, 432 F.3d 542, 545 (3d Cir. 2005).  A court is required to hold an evidentiary hearing when the motion "allege[s] any facts warranting § 2255 relief that are not clearly resolved by the record."  United States v. Tolliver, 800 F.3d 138, 141 (3d Cir. 2015) (quoting Booth, 432 F.3d at 546).

3

**III.    Discussion**

A collateral attack based on ineffective assistance of counsel is governed by the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668 (1984). To prevail on this claim, a defendant must demonstrate, first, that trial counsel's representation fell below an objective level of reasonableness based on prevailing professional norms and, second, that the deficient representation was prejudicial. See Strickland, 466 U.S. at 687-88. Conclusory allegations are insufficient to entitle a defendant to relief under Section 2255. See United States v. Thomas, 221 F.3d 430, 437 (3d Cir. 2000); Sepulveda v. United States, 69 F. Supp. 2d 633, 639-40 (D.N.J. 1999) (citing Blackledge v. Allison, 431 U.S. 63 (1977)).

In determining whether counsel has satisfied the objective standard of reasonableness under the first prong, courts must be "highly deferential" toward counsel's conduct. Strickland, 466 U.S. at 689. There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. See United States v. Gray, 878 F.2d 702, 710 (3d Cir. 1989). Only a "rare claim" of ineffectiveness of counsel should succeed "under the properly deferential standard to be applied in scrutinizing counsel's performance." Id. at 711 (citing Strickland, 466 U.S. at 689-90). Counsel will not be deemed ineffective for failing to raise a meritless claim. See United States v. Sanders, 165 F.3d 248, 253 (3d Cir. 1999). To satisfy the prejudice prong, the defendant must establish a reasonable probability that, but for counsel's errors, the outcome of the proceeding "would have been different." Strickland, 466 U.S. at 694. The district court need not conduct its analysis of the two prongs in a particular order or even address both prongs of the

inquiry if the defendant makes an insufficient showing in one.  See id. at 697; United States v. Lilly, 536 F.3d 190, 196 (3d Cir. 2008).

Stallings mounts two challenges to Attorney Rowland's performance.  *First*, Stallings claims that his counsel provided improper advice that led him to decline the government's plea offer and to proceed to trial.  *Second*, he contends that, at trial, counsel failed to adequately contest the "but for" element of the drug-induced death charge.  We take up each theory in turn.

**A.     Ineffective Assistance at the Plea-Bargaining Stage**

The right to effective counsel "extends to the plea-bargaining process," and habeas relief may be justified "where ineffective assistance results in a rejection of the plea offer and the defendant is convicted at the ensuing trial."  Lafler v. Cooper, 566 U.S. 156, 162-63 (2012).  In evaluating a proposed plea agreement, "counsel is required to give a defendant enough information 'to make a reasonably informed decision whether to accept a plea offer.'"  United States v. Bui, 795 F.3d 363, 367 (3d Cir. 2015) (quoting Shotts v. Wetzel, 724 F.3d 364, 376 (3d Cir. 2013)).  To succeed on the theory that counsel provided inadequate information, the defendant must demonstrate that "the advice he received was so incorrect and so insufficient that it undermined his ability to make an intelligent decision about whether to accept the offer."  Morris v. Adm'r N.J. State Prison, 770 F. App'x 601, 605 (3d Cir. 2019) (nonprecedential), *cert*. denied *sub nom*. Morris v. Johnson, 140 S. Ct. 837 (2020) (quoting United States v. Day, 969 F.2d 39, 43 (3d Cir. 1992)); United States v. Cobb, 110 F. Supp. 3d 591, 597 (E.D. Pa. 2015) (quoting Day, 969 F.2d at 43).  Throughout this inquiry, we remain mindful that counsel is "strongly presumed to have

5

rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690

Stallings claims that Attorney Rowland all but guaranteed him that he could not lose the drug-induced-death charge at trial because the government's evidence connecting him to the deceased was "legally insufficient."  (See Doc. 454 at 2-3; see also, e.g., 8/12/20 Tr. 40:10-12).  An attorney's incorrect assessment regarding the government's ability to convict as a matter of law may amount to deficient performance.  See Lafler, 566 U.S. at 160-61 (acknowledging concession by both the defendant and the government that "the prosecution would be unable to establish his intent to murder [victim] because she had been shot below the waist" was deficient); see also Bui, 795 F.3d at 367 (citing Day, 969 F.2d at 43) (inaccurate advice regarding sentencing exposure may constitute deficient performance).  But Stallings has failed to establish that Attorney Rowland made any promises to him regarding the outcome of the trial.  To the contrary, Attorney Rowland credibly

6

testified that Stallings was absolutely adamant that he did not want to plead guilty.[2] (See, e.g., 8/12/20 Tr. 7:3-5 (Stallings was "unwilling to plead guilty to anything or accept a plea . . . ."); id. at 11:14-16 ("[H]e didn't want to plead guilty under any circumstances.  He didn't want to do any time whatsoever."); id. at 24:1-3 ("[H]e was so adamant about not wanting to plead to anything, that left little room to go forward with any logical explanation as to what would happen."); see also id. at 7:18-20, 7:24-25, 16:10-24, 23:25-24:3).

The record also reflects that Attorney Rowland properly advised Stallings of the risks of going to trial.  Attorney Rowland testified that he reviewed the plea agreement and Stallings' estimated sentencing exposure with him on several occasions before trial.  (See id. at 4:5-7:25).  He also explained that he went over the risks and possibilities inherent in going to trial, (id. at 7:1-25), and advised Stallings of the sentences imposed on his codefendants as an implicit indication of the strength of the government's case, (id. at 16:24-17:10, 21:10-22:6).  Despite having

---

[2] Stallings implicitly concedes that Attorney Rowland's did not provide any guarantees—he testified that Attorney Rowland told him: "If you go to trial, we *could* win."  (See id. at 39:12-15 (emphasis added); see also id. 42:9-11; id. at 35:17-36:7 (stating "the government's case was *weak*" and "we *can* do this" (emphasis added))).  Stallings vacillated at the hearing between using words like "could" win and "would" or was "going to" win.  (See, e.g., id. at 57:1-2, 37:22-24, 44:19-20).  Stallings' two witnesses—his mother and fiancée—also testified that, based on their various conversations with Attorney Rowland, they believed Stallings would be acquitted.  (See id. at 52:1-16; id. at 56:26-57:2).  Stallings' fiancée testified that Attorney Rowland "made it sound like Eugene was coming home."  (Id. at 52:10-16).  His mother testified that Attorney Rowland said "we *would* win the case," but at the same time described her understanding of the odds as just "a good chance."  (See id. at 57:1-6 (emphasis added)).  Even if we were to credit this testimony, none of it definitively establishes that Attorney Rowland promised victory at trial when read in light of the other testimony offered at the hearing.  Advising your client that victory is possible is far different from guaranteeing it.

7

this information, Stallings maintained his insistence on remaining out of prison and rejected the government's plea offers.

To be sure, Stallings tells a different story: he claimed at the August 12, 2020 evidentiary hearing that Attorney Rowland told him not to take the plea offer, and that he never saw a plea offer, discussed plea terms, or was apprised of his sentencing exposure. (Id. at 36:4-5, 37:19-38:7, 40:10-25, 42:9-11). Not only is this inconsistent with Attorney Rowland's highly credible testimony, it is refuted by Stallings' *own* testimony. The day before jury selection, we held a hearing to ensure Stallings had received and reviewed any and all plea offers made by the government. During that hearing, Stallings testified under oath that he had received the plea offer, discussed it with his attorney, and been advised of his sentencing exposure, the government's evidence against him, and the risks and potential benefits of going to trial. (2/1/16 Tr. 7:21-9:7). That exchange proceeded, in relevant part, as follows:

> Q: Are you aware that the government has offered you a plea agreement?
>
> A: Yes, sir.
>
> Q: And did Mr. Rowland inform you of this plea agreement?
>
> A: Yes, sir.
>
> Q: And has Mr. Rowland fully explained the terms of the agreement to you?
>
> A: Yes, sir.
>
> Q: And did he answer all of your questions regarding the plea agreement to your satisfaction?

>    A:   Yes, sir.
>
>    Q:   Did Mr. Rowland provide you with an assessment of the risks and potential benefits of proceeding to trial?
>
>    A:   Yes, sir.
>
>    Q:   Did Mr. Rowland provide you with an assessment of the risks and potential benefits of proceeding to trial?
>
>    A:   Yes, sir.
>
>    Q:   Did Mr. Rowland explain to you your sentencing exposure under the plea agreement?  And when I say sentencing exposure, I mean the range of possible sentences that you may ultimately receive if you plead guilty or are convicted at trial.
>
>    A:   Yes, sir.
>
>    Q:   So you had the ability to compare?
>
>    A:   Yes.
>
>    Q:   All right, and have you made an informed decision to reject the plea agreement that was communicated to you?
>
>    A:   Yes.

(See id.)

As noted, we credit Attorney Rowland's testimony, which is corroborated by Stallings' sworn pretrial representations to the court.  We find that Attorney Rowland met his constitutional obligation to Stallings by presenting the plea agreement to him, fully explaining its terms, and discussing with Stallings the ramifications of accepting or rejecting the offer.  Stallings has therefore not met his

burden of establishing that Rowland's performance was constitutionally deficient, so we need not reach the question of prejudice.

**B.    Ineffective Assistance During Trial**

The United States Supreme Court has noted that there will be cases in which "the only reasonable and available defense strategy requires consultation with experts or introduction of expert evidence, whether pretrial, at trial, or both." Harrington v. Richter, 562 U.S. 86, 106 (2011). Stallings argues that Rowland was ineffective for failing to contest causation vis-à-vis the drug-induced-death charge by using an expert to identify and distinguish the substances in Golter's system. (Doc. 454 at 3). Yet it is also beyond peradventure that counsel's well-founded "strategic choices . . . are virtually unchallengeable." Strickland, 466 U.S. at 691. Informed counsel is therefore permitted to "make a reasonable decision that makes particular investigations unnecessary," id., to "formulate a strategy that was reasonable at the time[,] and to balance limited resources in accord with effective trial tactics and strategies," Harrington, 562 U.S. at 107 (citations omitted).

After Stallings filed his Section 2255 motion, he requested funds for a forensic pathology expert to support his ineffective assistance claim. Stallings sought to employ an expert to review the issue of causation, specifically, to "assess and give . . . an opinion on whether it was possible to have raised reasonable doubt on the issue of whether heroin was the but for cause of the victim's death." (Doc. 470 ¶ 6; see id. ¶ 2). In resolving Stallings' request, we noted that, at trial, the government had introduced "unequivocal evidence from two medical experts indicating that Golter's death was directly caused by an accidental heroin

10

overdose." <u>Stallings</u>, 380 F. Supp. 3d at 460.  We further noted that there was no indication in the trial record or in Stallings' submissions that Golter's death might have been caused by something other than heroin ingestion.  <u>See</u> <u>id.</u>  We accordingly denied Stallings' request, concluding that it was nothing more than a "fishing expedition," based on "pure speculation regarding what a counter-expert might opine."  <u>Id.</u>

In advance of the evidentiary hearing, the parties agreed not to present evidence regarding this ineffective-assistance-of-counsel charge.  (<u>See</u> Doc. 477; 8/12/20 Tr. 25:13-28:15).  Stallings has still not offered any factual basis to undermine Attorney Rowland's consideration of, investigation into, or basis for deciding not to hire an expert.  Furthermore, as indicated in our earlier opinion, Stallings' theory as to the value of a forensic expert regarding causation is speculative given the circumstances surrounding Golter's death.  <u>See</u> <u>Stallings</u>, 380 F. Supp. 3d at 460 (summarizing relevant circumstances established at trial).  Mindful that the movant bears the burden of proving deficient performance, and counsel's decisions are entitled to great deference, <u>see</u> <u>Strickland</u>, 466 U.S. at 687, 689, 691, we find no basis to condemn Attorney Rowland's decision to forego an expert, <u>see also</u> <u>United States v. Strausbaugh</u>, No. 1:11-CR-96, 2019 WL 2207506, at *8-9 (M.D. Pa. May 22, 2019) (Conner, C.J.) (Section 22255 movant "cannot meet his burden under <u>Strickland</u> 'based on vague and conclusory allegations that some unspecified and speculative testimony might have established his defense'" (internal quotation marks and citations omitted)).

11

Moreover, Stallings has failed to demonstrate prejudice. Stallings argues that expert testimony was "directly relevant to raising reasonable doubt," (Doc. 454 at 8), and that it *could have undermined* the jury's conclusion that heroin was the cause of death, (Doc. 470 ¶ 6). Yet, again, the evidence in Stallings' case overwhelmingly established heroin usage as the cause of death. See Stallings, 380 F. Supp. 3d at 460. Stallings proffers no factual averments—much less evidence—casting doubt on the opinions offered by the government's witnesses or the circumstances surrounding Golter's death. Stallings has therefore failed to establish a "reasonable probability" that, but for Attorney Rowland's decision not to employ an expert, the outcome at trial would have been different. Strickland, 466 U.S. at 694.

## IV.     Conclusion

We will deny Stallings' motion (Doc. 450) to vacate, set aside, or correct sentence. We will also deny a certificate of appealability, because Stallings has not "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:     March 26, 2021